## A09A1790. FULTON COUNTY BOARD OF TAX ASSESSORS v. WHITE.

(691 SE2d 341)

DOYLE, Judge.

Following a property tax appeal in superior court, the Fulton County Board of Tax Assessors appeals a $37,475.39 attorney fee award made pursuant to OCGA § 48-5-311 (g) (4) (B) (ii) to Efrosini White, the taxpayer.[1] Because the superior court correctly ruled that the jury's final valuation in the appeal met the statutory criterion authorizing an attorney fee award, we affirm.

The undisputed record shows that in 2007, the Board of Tax Assessors sent a notice to White stating that the assessed value of her home had increased from $685,500 to $783,500, "to reflect current market or uniformity." White submitted a notice of appeal to the board of tax assessors, which reviewed the valuation and concluded that, "[b]ased on our review of sales activity, data characteristics, assessments of similar properties within your area, and/or issues of depreciation, it is the decision of the Board of Assessors that the value is fair and equitable and warrants no change." White's appeal was then certified to the Fulton County Board of Equalization, which held an evidentiary hearing and concluded that no change from the $783,500 valuation was warranted. White then appealed to the Fulton County Superior Court, which held a jury trial pursuant to OCGA § 48-5-311 (g), resulting in a verdict valuing White's property at $618,650.

After the trial, the superior court entered a final judgment ordering the Board of Tax Assessors to enter the valuation found by the jury, and, based on an evidentiary hearing, the superior court awarded White attorney fees of $37,475.39 pursuant to OCGA § 48-5-311 (g) (4) (B) (ii). The Board now appeals the fee award.

OCGA § 48-5-311 (g) (4) (B) (ii) provides, in relevant part, that after a tax appeal to the superior court, "[i]f the final determination of value on appeal is . . . *85 percent or less of the valuation set by the*

---

[1] The reasonableness of the fee amount is not challenged on appeal.

*county board of tax assessors* . . . , the taxpayer . . . shall recover costs of litigation and reasonable attorney[ ] fees incurred in the action. . . ."[2] Based on this language, the superior court determined that because the jury's valuation of $618,650 was 85 percent or less than the $783,500 set by the Board of Tax Assessors in its notice and during the Board of Equalization appeal,[3] White was entitled to attorney fees.

On appeal, the Board of Tax Assessors argues that the superior court erred in basing the percentage calculation on the $783,500 amount instead of a lower amount, $713,400, agreed to by the Board of Tax Assessors, based on new information, after the Board of Equalization's decision. Because using the lower amount as the original valuation would mean that the jury's valuation was 87 percent of the original valuation, an award of attorney fees would not be authorized under OCGA § 48-5-311 (g) (4) (B) (ii). However, based on the language of the statute, we discern no error.

> We begin our analysis with the "golden rule" of statutory construction, which requires us to follow the literal language of the statute unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else. When literal reading of the statute produces such an absurdity, the appellate court must then seek to make sense out of the statute, while being faithful to the legislative intent. To define the legislative intent, the court considers the purpose of the statute and its impact on the body of law as a whole. The court also considers the law as it existed before the statute was passed and identifies the mischief sought to be corrected. Finally, when a taxing statute has doubtful meaning, it must be construed liberally in favor of the taxpayer and against the State.[4]

Here, the statutory language authorizes an award of attorney fees if the jury's valuation is "85 percent or less of the valuation set by the county board of tax assessors." Thus, we must determine whether the superior court erred in concluding that the "valuation set by the county board of tax assessors" was $783,500. The undisputed record shows that $783,500 was listed by the Board of Tax Assessors in its tax notice to White, certified by the Board of Tax

---

[2] (Emphasis supplied.)

[3] $618,650 is 79 percent of $783,500.

[4] (Citations and punctuation omitted.) *TELECOM*USA v. Collins*, 260 Ga. 362, 363-364 (393 SE2d 235) (1990).

Assessors in White's appeal to the Board of Equalization, and was the valuation appealed by White to the superior court. The Board of Tax Assessors declined to make any change to the valuation until after White's appeal had begun in superior court, and, even then, there was evidence that the change was never formally adopted by the Board of Tax Assessors. Under these facts, the superior court correctly concluded that the "valuation set by the county board of tax assessors" was $783,500.

The Board of Tax Assessors argues that because it changed its position during the superior court litigation, as documented by its contentions in the consolidated pretrial order, the lower valuation should be used. However, this would render the absurd result that the valuation of White's property was not "set" by the Board of Tax Assessors until litigation was already pending in superior court — after White had already unsuccessfully sent her notice of appeal to the Board of Tax Assessors and unsuccessfully appealed to the Board of Equalization. But if the valuation had not been "set" by the Board of Tax Assessors, White would have had no reason to appeal the valuation to the Board of Equalization (or in the superior court). "It is the duty of [this] court . . . to consider the results and consequences of any proposed statutory construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature."[5] We therefore reject the Board of Tax Assessors' interpretation.

Moreover, our interpretation is faithful to the legislative change that resulted in the current statutory language.[6] In 2006, the relevant language changed from "85 percent or less of the valuation set by the *county board of equalization*" to "85 percent or less of the valuation set by the *county board of tax assessors*."[7] Under OCGA § 48-5-311 (e) (1), "[a]ny resident or nonresident taxpayer may appeal from an assessment by the county board of tax assessors to the county board of equalization. . . ." Thus, the valuation set by the Board of Equalization is determined during the appeal process, after the taxpayer has unsuccessfully sought an adjustment by the Board of Tax Assessors. By amending OCGA § 48-5-311 (g) (4) (B) (ii), the General Assembly shifted the fee criterion to an earlier time in the process, making the Board of Tax Assessors' valuation the benchmark for the availability of attorney fees in an appeal to the superior

---

[5] (Punctuation omitted.) *Hawks v. Hinely*, 252 Ga. App. 510, 513 (1) (a) (556 SE2d 547) (2001).

[6] See *TELECOM*USA*, 260 Ga. at 364 ("The court also considers the law as it existed before the statute was passed.").

[7] (Emphasis supplied.) OCGA § 48-5-311 (g) (4) (B) (ii). See Ga. L. 2006, p. 769, § 1 (effective upon approval by the Governor on May 3, 2006).

court. Under the former scheme, if the Board of Equalization reduced the valuation, the availability of fees was based on that reduced value. Under the current scheme, if a valuation by the Board of Tax Assessors is more than the statutory benchmark, the Board of Tax Assessors does not benefit from the reduced valuation by the Board of Equalization later in the appeal process. This has the effect of placing the burden on the Board of Tax Assessors to accurately value property at the outset (or at the latest upon receipt of a notice of appeal from a taxpayer[8]), rather than placing the burden on the taxpayer to appeal an excessive property valuation. Therefore, in light of this statutory change, we conclude that the trial court did not err in using the $783,500 valuation set by the Board of Tax Assessors.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 25, 2010.

*Cheryl M. Ringer*, for appellant.
*Proctor, Hutchins & Porterfield, Robert J. Proctor, Christopher M. Porterfield*, for appellee.

---

[8] See OCGA § 48-5-311 (e) (2) (A) (upon receipt of a notice of appeal, "[t]he county board of tax assessors shall review the valuation or denial in question and, if any changes or corrections are made in the valuation or decision in question, the board shall send a notice of the changes or corrections to the taxpayer").